**Affirmed and Majority and Dissenting Opinions filed May 12, 2016.**



In The

# Fourteenth Court of Appeals

### NO. 14-15-00023-CR

**EMMETT JEFFREY BANKS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 207th District Court**
**Comal County, Texas**
**Trial Court Cause No. CR 2013-542 (Counts I, II, III, IV)**

## DISSENTING OPINION

The Texas Legislature clearly and understandably intends to be "tough on crime" when it comes to sexual offenses against children. That does not mean, however, that the State may unconstitutionally over charge an offender or that this court may find waiver where it does not exist. Because the majority permits this overreach, I respectfully dissent.

# *Double-Jeopardy*

The jury determined that appellant committed four distinct sexual offenses. It is undisputed that the actions on which these offenses were predicated occurred on the same day and on the same couch and most likely within a 45-minute time span. They also all involved appellant using his hand to touch complainant's sexual organ. By any definition, they occurred during the course of one horrible episode. The majority concludes that the jury properly found appellant had four separately-formulated intents or impulses in committing these acts. I cannot agree that the evidence, nor any reasonable inference, supports this conclusion.[1]

The complainant testified about the incident as follows:

Q:     Okay. Can you tell us what you're talking about?

A:     [Appellant] touched me.

Q:     Okay. Where?

A:     On my private.

. . . .

Q:     Okay. Do you remember that day?

A:     Yes.

. . . .

Q:     Okay. So sitting [on the couch] at 4:00 when you first go sit down, what happened after that?

A:     I sat down. Me and [appellant] were watching American Idol
       . . . .

Q:     So when you're sitting on the couch watching American Idol, where is [appellant]?

A:     Sitting next to me.

---

[1] As will be discussed below, the majority's holding rests alternatively on waiver and a determination that there was no double jeopardy violation in this case. I would hold that there was no waiver of the issue and the four convictions violated the prohibition against double jeopardy.

. . . .

Q:     Okay.  After that [appellant licked complainant's neck], what happened?

A:     He rubbed the top of my jeans.

. . . .

Q:     Did he saying [sic] anything else to you?

A:     I started backing up and he told me to stop backing up.

. . . .

Q:     Okay.  Did he say anything else that you remember?

A:     No.  He—he pulled the blanket down and told me to go change into some shorts.

Q:     Okay. . . .  What happened immediately after you—he said stop backing away?

A:     I stopped backing away and he rubbed up and down.

Q:     Where was his hand at that point?

A:     On my private part.

. . . .

Q:     [I]n relation to your pants, where was his hand?

A:     On top of my jeans.

Q:     Okay.  Did that change there?

A:     Yes.

Q:     Okay.  How?

A:     He unbuttoned my jeans and went under.

. . . .

Q:     What did he go under?

A:     My underwear and my jeans.

Q:     And what happened immediately after that?

A:     He touched—rubbed up and down.

. . . .

Q:     Okay.  How long did he rub up and down?

3

A:    For about ten to 20 minutes [sic].

Q:    How were you able to tell how long it took?

A:    Well, because when he told me to go get changed, it was about 4:30.

Q:    Okay.  So when was it that you said it had started?

A:    Like 4:15.

Q:    [W]hen you say he rubbed up and down, was he touching the inside or the outside of your part?

A:    Both.

Q:    After that, what happened?

A:    When he told me to get shorts, I put on my shorts and I went back.[2]

. . . .

Q:    Okay.  And what happened when you went back?

A:    He did it again.

. . . .

Q:    What happened first when you got back to the couch?

A:    I got back and he put his hand on my shorts; and he put his hand under my shorts and touched me.

. . . .

Q:    Okay.  Where did he touch you . . . ?

A:    Right here on my private.

Q:    When it first started, was it over the clothes or under the clothes?

A:    Under.

Q:    How did he touch you that second time?

A:    He like—like sideways.

. . . .

---

[2] As the majority points out, complainant further testified at this point that after she changed into shorts at appellant's direction, she also closed appellant's son's door, also as instructed by appellant, before returning to the couch.

Q: Okay. Did he touch the inside or outside?

A: Both.

. . . .

Q: What happened to make it stop?

A: [Appellant's son] walked out [of his room] to get some tea and food and asked me if I wanted any. I said yes. So I got up and got some and [appellant's son] went and sat on the couch.

While the Court of Criminal Appeals has concluded that separate sexual acts during one assault can result in separate punishments when evidence demonstrates that the defendant truly performed multiple, separate, completed acts, the Court has also cautioned against the "hypertechnical division of what was essentially a single continuous act." *Aekins v. State*, 447 S.W.3d 270, 277-79, 281, 283 (Tex. Crim. App. 2014). I believe the majority engages in just such a hypertechnical division when it concludes that appellant engaged in four separate and distinct sexual offenses occasioned by four separate and distinct intentions. To the contrary, the facts in this case indicate that appellant intended to molest complainant by using one instrument, his hand, to touch and penetrate one body part, her genitals, all while avoiding detection by others in the room. He began by touching her through her clothing, escalated his behavior by moving his hand inside her clothing, then instructed her to change into shorts before continuing the same conduct. *See id.* at 281 ("In short, in Texas, as in many other jurisdictions, a defendant may not be convicted for a completed sexual assault by penetration and also for conduct (such as exposure or contact) that is demonstrably and inextricably part of that single sexual assault."). In no reasonable sense did appellant complete a sexual act before formulating a "fresh impulse" and determining to pursue a new course of conduct, much less doing so multiple times. *See id*. at 282. Although his actions escalated during the assault (going from outside her clothes to inside and from touching to penetration), his intention remained the same and the entirety of the encounter

5

constituted but one assault. *See id.* ("A rape is one act from beginning to end . . . ."). Although touching can certainly be a separate offense from penetration, here the touching was merged into or subsumed within the ultimate act of penetration as they were part of the same escalating conduct. *See id.*

The prosecution and the majority appear to divide appellant's conduct into touching complainant outside her jeans, penetrating complainant inside her jeans, touching complainant outside her shorts, and penetrating her inside her shorts.[3] However, just because we can intellectually perform such an exercise does not mean that we should. We could further imagine that each movement of appellant's hand had a separate intention behind it; he certainly was in control of his hand and decided each movement of his fingers. Following the majority's logic, could each of these movements be a separate offense? The Legislature has not manifested an

_____

[3] Appellant was indicted and convicted for two counts of aggravated sexual assault of a child under Penal Code section 22.021 and two counts of indecency with a child by contact under Penal Code section 21.11(a)(1). Tex. Penal Code Ann. §§ 22.021, 21.11(a)(1). This case therefore involves analyzing both whether double jeopardy protections bar convictions for violation of both statutes under the facts of this case as well as whether those protections bar convictions for two violations of each separate statute. *See Blockburger v. United States*, 284 U.S. 299, 301-02, 304 (1932) (considering double jeopardy implications of prosecution under separate statutes); *Speights v. State*, 464 S.W.3d 719, 722-24 (Tex. Crim. App. 2015) (discussing "units of prosecution" under a single statute); *Aekins*, 447 S.W.3d at 274-75 (discussing *Blockburger* as well as concepts of "single impulse" and the "doctrine of subsumed acts").

Arguably, the break in the assault occasioned by complainant changing from jeans to shorts could have caused a break in appellant's intent or impulse such that when the complainant returned to the couch, appellant committed a second assault. *See Patterson* at 434 (affirming conviction of two "essentially identical assaults, separated by a short period of time" where defendant penetrated complainant's anus with his penis before she left her bed and went to the bathroom and penetrated her anus with his penis again after she returned to her bed from the bathroom). However, I think this unlikely as the clothing change occurred at appellant's direction; thus, appellant had not completed any impulse or reached a "fork in the road" regarding his conduct. *Aekins*, 447 S.W.3d at 282; *see also Spain v. United States*, 665 A.2d 658, 660 (D.C. 1995) (concluding, under similar facts, the issue is whether there was evidence to show that the defendant reached a decision point, a "fork in the road" leading to a "new impulse," resulting in a different offense). Regardless, even if this break is viewed as restarting the assault, there would still be two convictions too many in this case as the indecency by touching offenses were subsumed in the aggravated sexual assault offenses.

intent to authorize "stop-action" prosecutions (and therefore multiple punishments) for a single complete act of sexual assault. *Id.* at 281; *see also Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) ("The [legislative] scheme encompasses escalation of abuse; no matter where in the range the perpetrator stops, the offense is complete at that point. . . . While it is clear from the plain language of the various statutes that the legislature intended harsh penalties for sexual abuse of children, there is nothing in the language to suggest that it intended to authorize 'stop-action' prosecution.").[4]

Although the Court of Criminal Appeals has used restrictive language in some recent double jeopardy cases, those cases are factually distinguishable from the present case. For example, in *Maldonado v. State*, the Court stated, "An offense may be factually subsumed when there is a single act that cannot physically occur in the absence of another act." 461 S.W.3d 144, 149 (Tex. Crim. App. 2015).[5] The Court then held that the two indecency convictions at issue were not subsumed within the greater aggravated sexual assault convictions because the evidence demonstrated ***multiple instances of conduct involving different acts over a span of many years***. *Id*. As detailed above, the evidence in the present case established one incident of about 45 minutes duration, occurring on one couch, and involving escalating conduct, not separate incidents involving different completed

---

[4] Certainly the duration of an assault can be considered by the jury in determining the appropriate punishment. If tried and convicted for only one of the greater offenses charged in this case, aggravated sexual assault of a child, a first degree felony, appellant still could have been sentenced to life in prison, the same punishment he ultimately received with four convictions and an enhancement. *See* Tex. Penal Code Ann. §§ 12.32 (providing punishment range for first degree felonies), 22.021(e) (defining aggravated sexual assault of a child as a first degree felony). Dividing sexual assault into ever-more-detailed units of prosecution threatens to overcomplicate jury charges, distract jurors, and change the focus of victim testimony.

[5] I acknowledge that this language can be analyzed in terms of physics or in terms of intent. If no "rubbing" precedes penetration, the contact offense is subsumed as a matter of physics. If "rubbing" precedes penetration as an inextricable part of the sexual assault, the contact offense is subsumed as one continuous act and one continuous intention.

acts at different times.

In *Speights v. State* and *Loving v. State*, the respective defendants were convicted for both indecency by exposure and indecency by contact. *Speights*, 464 S.W.3d 719, 721 (Tex. Crim. App. 2015); *Loving*, 401 S.W.3d 642, 643 (Tex. Crim. App. 2013). Evidence in the cases supported the conclusion that each defendant first exposed himself and masturbated in front of the child victim or victims before then causing sexual contact with a child. *Speights*, 464 S.W.3d at 721; *Loving*, 401 S.W.3d at 643. Although the two offenses in each case occurred in close temporal proximity, the contact in both cases was not part of the masturbation; thus, the Court of Criminal Appeals concluded that the exposure offenses were not subsumed within the contact offenses. *Speights*, 464 S.W.3d at 722-24; *Loving*, 401 S.W.3d at 647-49. Here, however, appellant only used one instrument, his hand, to touch and penetrate one body part, complainant's genitals, during a relative short period of escalating conduct. Appellant did not engage in multiple types of conduct at multiple times and thus should not have been charged or convicted of four separate offenses. In holding otherwise, the majority goes well beyond the demands of Court of Criminal Appeals' precedent and unduly restricts the Constitutional right of Texans to be free from multiple punishments for one offense.

### *Waiver*

I additionally disagree with the majority's assessment that appellant waived his double-jeopardy claim by failing to raise it in the trial court. As the majority acknowledges, the lack of a trial objection is not a bar to presenting the issue on appeal "when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8

8

S.W.3d 640, 643 (Tex. Crim. App. 2000). A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim. *Ex parte Denton*, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); *Ex parte Knipp*, 236 S.W.3d 214, 216, n.3 (Tex. Crim. App. 2007); *Gonzalez*, 8 S.W.3d at 643. Here, appellant's double-jeopardy claim is based on the record of the proceedings below; it does not require any new or additional proceedings or the creation of a new record. *See Gonzalez*, 8 S.W.3d at 644 (analyzing Supreme Court cases *United States v. Broce*, 488 U.S. 563 (1989) and *Menna v. New York*, 423 U.S. 61 (1975)); *see also Denton*, 399 S.W.3d at 544-45. Moreover, enforcement of the usual rules of procedural default would serve no purpose here as the proper remedy for the double jeopardy violations would simply be reversal of certain convictions. *See Denton*, 399 S.W.3d at 547 ("When a defendant is convicted of two offenses and those convictions violate double-jeopardy protections, the conviction for the more serious offense is retained, and the other conviction is set aside."); *see also Patterson*, 152 S.W.3d at 89, 92 (affirming court of appeal's reversal of convictions where indecency by exposure offense was subsumed by greater aggravated sexual assault offense). Accordingly, I would hold that no waiver occurred in this case.

For the foregoing reasons, I respectfully dissent.


/s/     Martha Hill Jamison
        Justice


Panel consists of Justices Jamison, Donovan, and Brown (Brown, J., majority).
Publish — Tex. R. App. P. 47.2(b).